### In re GORWOOD.

#### (District Court, M. D. Pennsylvania. July 5, 1905.)

#### No. 557.

BANKRUPTCY—ASSETS—SALE—FIXTURES—TERMINATION.

Where a bankrupt constructed an addition to a leased building on leased ground, whether such building constituted a fixture, or whether it was removable, as against the landlord, by a purchaser at a sale of the bankrupt's assets, could not be determined in advance of a sale and an attempt to sever.

In Bankruptcy. On exceptions to report of referee sur petition of trustee for leave to sell certain property.

A. Mitchell Palmer, for exceptions.
W. B. Eilenberger, for trustee.

ARCHBALD, District Judge. On September 5, 1900, the bankrupt, Arthur Gorwood, leased of Sarah C. Ransberry a blacksmith shop in the borough of East Stroudsburg, Pa., 30 by 20 feet in dimensions, and two stories high, and, by the same instrument, an unimproved L-shaped piece of land immediately contiguous, 22 feet in front on the street, and 50 feet in depth along the side of the shop, with an extension or arm 20 by 20 feet directly in the rear. The shop was let for five years, and the adjoining land for ten; both to be calculated from August 1, 1900. Soon after obtaining possession of the property, the bankrupt, at a cost of about $1,000, erected a frame building, entirely covering the unoccupied land, of the same height as the blacksmith shop, and enveloping it on side and rear. The new structure was fastened to the old, and had no interior walls of its own; those of the shop being utilized instead,

and the joists of floors and roof being supported on cleats nailed thereto. A doorway was also cut through the side of the shop, and an opening made in the rear, above and below, so as to throw the two buildings together; access to the upper story being had by stairs at the side of the shop. As so arranged, the whole premises were used by the bankrupt in his trade as a wheelwright; the several parts being devoted to its different branches. The building is said to be readily removable; resting, the same as the blacksmith shop, on a stone wall which bounds the street in front, and on wooden piles in the rear; the ground falling away in that direction. But if removed the changes made in the shop would have to be repaired in order to restore it to its former condition, the cost of which it is conceded would amount to about $35.

Finding this property among the effects of the bankrupt, the trustee has petitioned for leave to sell. So far as the blacksmith shop is concerned, the lease, having less than a month to run, is of no account. But the five years left on the rest of the property has a recognized value, particularly with the building upon it. Believing, however, that more can be realized by the sale of the building by itself, and conceiving that it is a removable fixture, the trustee has asked leave to sell it separately. This the landlord opposes, holding that it is not severable; and, the referee having decided against her, the case is brought here for review.

Much as I would like to assist in determining the question in controversy between the parties, this is not the time, nor are these proceedings the place, in which to do so. It would, no doubt, be of advantage to the estate if it could be definitely settled in advance of a sale whether the building put up by the bankrupt was legally removable, so that purchasers could bid with that assurance; and, left in uncertainty, they are not likely to pay by considerable as much as they otherwise would for the property. But for all of that, I do not see how to obviate it. Even if the court should undertake to express an opinion upon the subject, it would not bind. The parties might choose to respect it, but, if they did not, it could not be enforced. It is not like a lien, which the court may order divested at will. Not till an attempt is made to sever will the question really arise, and until then it must of necessity remain undisposed of. All that the trustee is authorized to sell is the bankrupt's rights, the extent of which he cannot guaranty, nor the court pronounce upon. Such as they are, being appurtenant to the lease, they will pass to the purchaser, to be enjoyed during its continuance. So far, prospective bidders have a certainty, which, being recognized, the value of the building in part, at least, will be realized for the estate. But beyond this it is a speculation, as to which the parties concerned must act upon their own responsibility.

The order of the referee is reversed, and sale is directed to be made by the trustee of the leasehold and the improvements as a single property, to be free and clear of liens upon due previous notice in writing being given to the holders.