**In re SUNCREST PACKERS, Inc.**

No. 540.

District Court, D. Nevada.

Nov. 7, 1934.

918

Fernhoff & Sevier, of Oakland, Cal., for trustee in bankruptcy.

Green & Lunsford, of Reno, Nev., for respondents.

NORCROSS, District Judge.

Upon petition of the trustee of the above-named bankrupt, an order was entered by the United States District Court for the Northern District of California, Southern Division, in case No. 18623–K, authorizing said trustee to institute ancillary proceedings in this court "for the purpose of restraining and enjoining any and all persons from interfering with the peaceful possession of the said property belonging to said bankrupt estate * * *."

In pursuance of such order a petition was filed by said trustee in this court alleging that "the said bankrupt estate is the owner of certain shell marl deposits situated in Washoe County, State of Nevada, and described as follows:" Here follows description of nine mining claims or groups of claims by name as recorded, totaling in area 693.58 acres. That on the 23d day of August, 1934, Arthur R. Spencer and five others filed for record six placer claims designated Rivermont Nos. 1 to 6, which said Rivermont claims cover a portion of said mining claims of the said bankrupt. It is further alleged that said Spencer and his associates are removing deposits of shell marl, and generally working said claims, and if allowed so to continue said bankrupt estate will be irreparably injured, and that there is no speedy and adequate remedy at law. The petition prays for a temporary restraining order and an order to show cause, if any they have, on a day certain, why a permanent injunction should not issue forever barring said locators from removing any deposits therefrom or asserting any claim, title, or interest in and to said mining claims. Upon the filing and presentation of said petition, a temporary restraining order was issued as prayed for, and an order to show cause why the same should not be made permanent. At the time specified in the order to show cause, the said Spencer and his associate locators filed an answer to the petition admitting the locations by them alleged to have been made and the filing of certificates thereof, and denying that any of the lands by them so located belong to or were owned by the said bankrupt estate at the time of said locations; that since said locations they have been in possession thereof, and from time to time have shipped the products thereof for commercial use as a soil fertilizer; and that since the 1st day of July, 1934, they have been, except as against the paramount title of the United States, the owners in possession and entitled to the possession of said Rivermont placer locations. In addition to said answer, said Spencer et al. filed a return to said order to show cause and a motion to discharge said restraining order and to dismiss said petition. The following legal questions are raised on the said return and motion to dismiss:

"1. That said petition does not state facts sufficient to entitle petitioners to the relief therein prayed for, or to any relief whatever.

"2. That it appears upon the face of said petition that the respondents are locators of placer mining claims upon property and premises claimed by the said petitioning trustee. That the said proceeding is in effect a proceeding to quiet title to lands and premises located upon vacant, unappropriated public domain of the United States; that this Court sitting in bankruptcy has no jurisdiction to hear, try or determine the respective rights of said parties except by a plenary action of which this Court would have jurisdiction by reason of the value of the matter in controversy and requisite diversity of citizenship.

"3. That it affirmatively appears from said petition that the lands and premises claimed by petitioner are vested in the Government of the United States, and whatever claims, if any, the petitioner has to said lands and premises are by virtue of placer mining locations pursuant to the provisions of sections

2329, 2330 and 2331, and the provisions of section 2324 of the Revised Statutes of the United States [see 30 USCA §§ 28, 35, 36], and that no facts are alleged showing compliance with the provisions of the United States mining laws or the provisions of an 'Act providing for the suspension of annual assessment work on mining claims held by location in the United States and Alaska,' approved May 15, 1934.

"4. That likewise it affirmatively appears from said petition that the respondents are locators over and upon part of the lands and premises claimed by petitioner and that respondents claim title to the premises located adversely to the petitioner. That this court sitting in bankruptcy has no power, jurisdiction or authority to hear, try or determine the adverse claims of petitioner and respondents and that respondents are not parties to or in any manner connected with or interested in the said bankruptcy proceedings."

Upon the hearing, affidavits and documentary evidence were introduced from which it appears that on June 23, 1933, the said trustee filed a "Notice of Desire to Hold Mining Claims for the Assessment Year 1932–1933." The notice in part reads:

"Notice is hereby given by the undersigned, Trustee in Bankruptcy ⁰ ⁰ ⁰ that said Bankrupt is the claimant of:" (Here follows description of claims as recorded, the same as set out in the Petition.)

"That as trustee of said Bankrupt he desires to hold said mining claims during the assessment year 1932 to 1933 under the provisions of the Act of Congress entitled 'An Act providing for the suspension of annual assessment work on mining claims held by location in the United States and Alaska,' approved May 18, 1933 [30 USCA § 28a]."

A similar notice was not filed by the trustee in pursuance of the Act of Congress of May 15, 1934, providing for a suspension of annual labor or improvements for the year "ending at 12 o'clock meridian July 1, 1934." The said act of May 15, 1934, also contains the provision: "That such suspension of assessment work shall not apply * * * to more than twelve placer-mining claims not to exceed two hundred and forty acres (in all) held by the same partnership, association or corporation."

Not only was no notice filed, but if such a notice had been filed the exemption was limited to a total of 240 acres, while the locations held by the bankrupt covered 693.58 acres. A selection in any event would have to be made and work performed on the remaining more than twenty-two claims.

It is the contention of petitioner, as trustee in bankruptcy, that the estate of the bankrupt being in custodia legis, Spencer and his associates could not make a valid location upon any placer claims theretofore held by the estate of the bankrupt. The precise question here presented has not heretofore been considered. It is, therefore, one of first impression. The trustee makes the contention that the same rule should here be applied as in cases where property of the bankrupt is sold at tax sales, courts in such instances having held that the bankrupt estate being in custodia legis, a purchaser at such sale could not, irrevocably, acquire title to the property so sold, citing Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190, and other cases therein cited.

We are here dealing with an altogether different state of facts than those presented in cases dealing with tax sales. It is too well settled to need a citation of authorities that upon an adjudication in bankruptcy the trustee thereafter elected or appointed is invested with the title to the property of the bankrupt wherever situated as of the date of the petition. The trustee takes no greater title and is invested with no superior rights in respect thereto than possessed by the bankrupt. It is not conceivable, for example, that a life estate held by a bankrupt could be extended beyond the life of the bankrupt upon any theory of custodia legis. The property right of the bankrupt here in question is placer mining locations which became vested in the trustee upon his election or appointment. While it is the settled law that a right in real property vests in the locator of a valid placer location made upon the public domain, the paramount legal title remains in the United States until patent is applied for and issued, subject to a right of possession in the locator, with the further right to exploit the same as though vested with full title, so long as the conditions of the mining laws requiring annual assessment work are complied with. If not complied with, the possessory right may be terminated by the exercise of a right granted to other citizens of the United States by the owner of the paramount title—the government of the United States—by the exercise of which right the possessory right to the land in question is transferred and that right vested in another or others. A well-understood reason lies at the base of the mining laws of the United States. It is the policy of the national government in the promotion of the

general public interest that so much of the public domain as contains mineral lodes or veins or mineral or nonmineral deposits, as distinguished from lands primarily agricultural in character, should be open to development by private enterprise. The public interest is not only in the discovery of such lodes, veins, or deposits, but primarily in their development.

 The effect of petitioner's contention is that in the case of a locator or the owner of a mining location adjudged a bankrupt, and his possessory right by reason thereof becoming vested in a trustee, the provision of the statute permitting the land to be located by another or others, on failure to do the required annual assessment work, does not apply, at least without the authority of the court of bankruptcy. To so hold it would be necessary to read something into the statute not in accord with its plain language. Upon occasion, as in the years 1933 and 1934, Congress by special act has suspended the provisions of the statute requiring annual assessment work for a particular year. Such special statutes, however, have made a condition precedent that the locator or owner file a notice of desire to hold the claim or claims. As before pointed out, the relief act of 1934, in case of corporations was limited to "twelve placer-mining claims not to exceed two hundred and forty acres in all."

The right of a relocator of a mining claim, whether lode or placer, is derived from the owner of the public domain—the United States—the same as in the case of the prior locator. The grant of right of possession is from the same source—the owner of the paramount title—in both instances. The owner of the paramount title, having definitely prescribed the conditions under which a possessory right may be maintained, and further provided that upon failure to comply with those conditions the land is subject to be acquired by another, the fact that a locator or his grantee is adjudged a bankrupt and such possessory rights are in custodia legis, the same are not thereby enlarged, but are subject to the original grant as expressed in the provisions of the statute. While there is no case directly in point, the same principle is controlling as applied in the following cases: Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997; Zartman v. First Nat. Bank, 216 U. S. 134, 30 S. Ct. 368, 54 L. Ed. 418.

 Where, as in this proceeding, it appears that the several parties sought to be enjoined are in actual possession of the property in question, claiming a right to such possession from the conceded owner of the paramount title, substantial questions both of fact and law are presented as to the latter's rights in the property which cannot be determined in a summary proceeding without consent but only in a plenary action. Remington on Bankruptcy, vol. 5, §§ 2134, 2135, 2439; Collier on Bankruptcy (12th Ed.) p. 539; Loveland on Bankruptcy, p. 100; Black on Bankruptcy, §§ 750, 847; 7 C. J. 106; Bear Gulch Placer Mining Co. v. Walsh (D. C.) 198 F. 353.

Petitioner is not entitled to a decree granting an injunction. The temporary restraining order is vacated.