### UNITED STATES v. COLD METAL PROCESS CO. et al.
### Civil No. 21910.

District Court, N. D. Ohio, E. D.

Oct. 5, 1944.

: Francis M. Shea, Asst. Atty. Gen., Don C. Miller, U. S. Atty., of Cleveland, Ohio, and Roy C. Hackley, Jr., Sp. Asst. to Atty. Gen., for plaintiff.

Clarence B. Zewadski, of Detroit, Mich., Franklin B. Powers, of Youngstown, Ohio, Howard F. Burns, of Cleveland, Ohio, Whittemore, Hulbert & Belknap, of Detroit, Mich., Manchester, Bennett, Powers & Ullman, of Youngstown, Ohio, and Baker, Hostetler & Patterson, of Cleveland, Ohio, for defendants.

MILLER, District Judge.

The United States of America brought this action for the purpose of having cancelled by judgment of this court, Patent No. 1,744,016 and Patent No. 1,779,195 dealing with the process of cold rolling metals. The principal ground of the complaint is that fraud was perpetrated upon the Patent Office by defendants in securing the issuance of these patents. Other allegations in the complaint are that all or parts of the patents should be cancelled upon various grounds other than fraud in the procurement thereof, such as mutual mistake of fact, and that as a matter of law said claims were not legally allowable by the Patent Office.

The plaintiff has moved for a temporary injunction enjoining the defendant corporation from receiving any further monies by way of royalties, payments in settlement of claims, or satisfactions of judgment for damages or otherwise on account of said patents; from making any further distribution to its stockholders on account of monies received under said patents; and from taking any steps for the collection of payments under said patents other than the reduction of claims to judgment or the direction to persons owing money by reason thereof to pay said money into the registry of this court to await disposition by this court upon final disposition of the present action. It is stated in the motion that the defendant corporation is promptly distributing monies re-

ceived by it from said license contracts to its stockholders which places it beyond the reach of the persons from whom these monies is being exacted in the event it is adjudged that the patents should be cancelled; that the defendant corporation is engaged exclusively in the business of holding and licensing patents and the collection of royalties and is itself not engaged in any operations which would be irreparably damaged or interfered with by the relief herein sought by the plaintiff. The defendants deny the alleged fraud and vigorously oppose the issuance of the temporary injunction prayed for, chiefly on the ground that a temporary injunction should never be granted where the right to the relief asked is doubtful, which they claim is the situation in the present case. Other practical difficulties in functioning under such a decree are also urged upon the Court, in addition to claiming that such an order would cause immediate, substantial and irreparable injury to the Cold Metal Process Company. The so-called practical difficulties do not impress the Court. Even though the licensees who will make the royalty payments in the future are not before the Court and no order can be binding against them, yet it is believed that a suitable order could be drafted requiring the defendants, over whom the Court does have jurisdiction, to take certain steps therein specified which would result in these payments being made either directly or indirectly into the registry of the court, and that the defendants could be permitted enough freedom of action to protect all rights under their contracts against such licensees which would fall short of actually receiving and distributing the money to stockholders. The real issue seems to be whether or not the Court should grant a temporary injunction where the right to the relief asked is doubtful. It appears that a number of decisions state the rule in such general terms as stated by the defendants, and in such cases the Courts have declined to issue a temporary injunction. See Anargyros & Co. v. Anargyros, 9 Cir., 167 F. 753; Hall Signal Co. v. General R. Signal Co., 2 Cir., 153 F. 907; Madison Square Garden Corporation v. Braddock, 3 Cir., 90 F.2d 924; Burroughs v. City of Dallas, 5 Cir., 276 F. 812; United States v. Weirton Steel Co., D.C.Del., 7 F.Supp. 255, 265; United States v. Hartol Products Corp., D.C.N.J., 8 F.Supp. 897; United States v. Schine Chain Theatres, Inc., D.C. W.D.N.Y., 31 F.Supp. 270, 272. However,

such a brief general statement does not appear to be a full and complete statement of the rule. It is no doubt well settled and conceded by both sides that whether a preliminary injunction shall be granted rests fundamentally in the sound discretion of the trial court, although such discretion must be exercised according to the well-known and established principles of equity. Deckert v. Independence Shares Corporation, 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189; Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 141, 39 S.Ct. 10, 63 L.Ed. 419. The more complete statement of the correct rule is contained in Volume 28, American Jurisprudence Subject Injunctions, Section 14, where it is stated:

"The application for a temporary injunction rests upon an alleged existence of an emergency, or of a special reason for such an order, before the case can be regularly heard, and the essential conditions for granting such temporary injunctive relief are that the complaint allege facts which appear to be sufficient to constitute a cause of action for injunction, and that on the entire showing from both sides it appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation. Where the danger or injury threatened is of a character which cannot be easily remedied if the injunction is refused and there is no doubt that the act charged is contemplated, the temporary injunction should be granted, unless the case made by the bill is satisfactorily refuted by the defendant. As stated by the Supreme Court, the rule is that where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable if the application is denied and the final decree is in his favor, while if the injunction is granted, the injury to the opposing party, even if the final decree is in his favor, will be inconsiderable or may be adequately indemnified by a bond, the injunction usually will be granted."

The Circuit Court of Appeals for this Circuit has in at least two instances decided the question upon a balancing of the conflicting equities, rather than upon the rule contended for by the defendants. In Blount v. Societe, etc., 6 Cir., 53 F. 98, 101, it said:

"The legal discretion of the judge or court in acting upon allegations for a pro-

visional injunction is largely controlled by the consideration that the injury to the moving party, arising from a refusal of the writ, is certain and great, while the damage to the party complained of, by the issuance of the injunction, is slight or inconsiderable."

Also in City of Louisville v. Louisville Home Tel. Co. 6 Cir., 279 F. 949, at page 956, the same Court said:

"It is equally well understood that the trial court will balance the conflicting equities of the parties, and, if it appears reasonably probable that plaintiff may prevail upon the final hearing, will for the time being preserve plaintiffs' supposed right against destruction, if that temporary maintenance can be accomplished without danger of greater harm to defendant than there will be of benefit to plaintiffs."

In that same case the Court held that a preliminary injunction may be issued without requiring the same degree of demonstration which would be required at a final hearing, and that where the result depends upon a disputed question of fact the plaintiff is usually entitled to the benefit of the presumption that upon the final hearing he may be able to establish his claims with sufficient certainty. The question is well considered and discussed in Pratt v. Stout, 8 Cir., 85 F.2d 172, 176, 177. In that case the Court said:

"Especially will the granting of a temporary writ be upheld when the balance of injury as between the parties favors its issue. (Cases cited.) If the questions presented by a suit for an injunction are grave and difficult and the injury to the moving party will be certain, substantial, and irreparable if the motion for a temporary injunction is denied and the final decision is favorable, while if the motion is granted and the decision is unfavorable the inconvenience and loss to the opposing party will be inconsiderable or he may be protected by a bond, the injunction usually should be granted. (Cases cited.)"

The same view was taken by the Court in the following cases: Doyne v. Saettele, 8 Cir., 112 F.2d 155, 160; American Medicinal Co. v. United Distillers, 2 Cir., 76 F. 2d 124, 125, 126; Sinclair Refining Co. v. Midland Oil Co., 4 Cir., 55 F.2d 42, 45; Continuous Glass Press Co. v. Schmertz Wire Glass Co., 3 Cir., 153 F. 577, 578.

The rule as quoted above from Pratt v. Stout also appears to be the rule laid down by the Supreme Court in Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972. In almost every lawsuit where the allegations of the complaint are denied the right to the relief asked is doubtful. The existence of such a doubt is what really causes the litigation. If we adopted the rule contended for by the defendants, the protection granted by a temporary injunction would rarely be available to the plaintiff. On this phase of the case it seems to the Court that it would be better for the Court to consider whether or not it appears reasonably probable that the plaintiff may prevail upon the final hearing, rather than to consider whether the relief asked for is doubtful. This probable right to prevail on the part of the plaintiff was specifically referred to by the Court in both City of Louisville v. Louisville Home Tel. Co., 6 Cir., supra, and in Sinclair Refining Co. v. Midland Oil Co., supra. The complaint is based in part upon alleged fraud upon the part of the defendants. If the alleged fraud is established by the evidence, the plaintiff's right to the relief asked is well established. United States v. American Bell Tel. Co., 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450; United States v. American Bell Tel. Co., 159 U.S. 548, 16 S.Ct. 69, 40 L.Ed. 255. Such facts as are established by the pleadings, together with the exhibits filed on the hearing, show that the plaintiff has a probable right to the relief asked, although it is of course recognized that upon final hearing the proof may fall short of that strong and convincing character which is necessary to establish fraud in matters of this kind. If the temporary injunction is not granted and the plaintiff should finally prevail, it would in all probability result in no practical benefit. The royalties which are in reality the substance of this suit would have been received by the defendant corporation and paid out to its stockholders by way of dividends. They could not be recovered. The damage would be immediate, certain and irreparable. On the other hand, the impounding of the funds in the registry of the Court will preserve the status quo of these royalties and preserve them for the benefit of the defendants if they should prevail in this litigation. The damage or loss to the defendants in handling the funds in this way is comparatively small. The Court feels that a balancing of the equities in this case justifies the issuance of the preliminary injunction prayed for.

In Paragraph 8 of the defendants' answer they state, in addition to the continued denial of the existence of any fraud in the

premises, that the United States is without authority or lawful right to maintain this suit for the cancellation of defendants' patents upon any ground other than fraud in the procurement thereof, and that the complaint, insofar as it is based upon other matters, states no cause of action entitling the plaintiff to any relief. They have filed a motion pursuant to Rule 12, Subdivisions c and d, of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that the legal defense asserted in this paragraph be heard and decided in advance of the trial, and that pursuant to Rule 56, Subdivision b, of the Rules of Civil Procedure partial summary judgment be entered for the defendants dismissing the complaint as to that part of plaintiff's claim based upon those allegations and prayers directed to the cancellation of all or parts of defendants' patents upon any ground other than fraud in the procurement thereof. The plaintiff contends that even if its evidence fails to establish the fraud charged, it would nevertheless be entitled to prevail if it established mistake of sufficient character and quality to justify equitable relief. Rule 12, Subdivsions c and d of the Rules of Civil Procedure authorizes a consideration and disposition at this time of the motion for partial summary judgment.

██ The complaint alleges in addition to fraud that the patents were issued as a result of a mistake of fact and that as a matter of law said claims were not legally allowable by the Patent Office. This Court will not undertake to review in this action the decision of the Patent Examiner or any alleged error of judgment or law on the part of the Patent Office, and defendants' motion for partial summary judgment with respect to that phase of the case will be sustained. It is believed that this point was conceded by Government counsel during the oral argument of the motion, but in any event it appears to be the well established law. United States v. Bell Tel. Co., 167 U.S. 224, 269, 17 S.Ct. 809, 42 L.Ed. 144; United States v. United States Gypsum Co., D.C., 53 F.Supp. 889, 900. Applicable decisions leave some doubt as to whether or not the Government is legally entitled to attack the patents in this proceeding on the ground of mistake of fact. The decisive cases are the three Telephone Company cases reported as follows: United States v. American Bell Tel. Co., 1888, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450; American Bell Tel. Co. v. United States, 1895, 159 U.S.

548, 16 S.Ct. 69, 40 L.Ed. 255; United States v. American Bell Tel. Co., 1897, 167 U.S. 224, 17 S.Ct. 809, 42 L.Ed. 144. The defendants rely upon the third of these decisions, while the plaintiff relies upon the first two of these decisions and contends that the third decision contains merely confusing dicta, which did not change or overrule the two previous decisions. Upon a careful re-reading of the three opinions I believe the plaintiff's position is probably correct, although not free from doubt. The Supreme Court said in its opinion in the second Telephone Company case, 159 U.S. 548, at page 555, 16 S.Ct. at page 72, 40 L.Ed. 255, in referring to the first case:

"In United States v. Telephone Company, supra, it was decided that where a patent for a grant of any kind issued by the United States has been obtained by fraud, by mistake, or by accident, a suit by the United States against the patentee is the proper remedy for relief, and that in this country, where there is no kingly prerogative, but where patents for land and inventions are issued by the authority of the government, and by officers appointed for that purpose, who may have been imposed upon by fraud or deceit, or may have erred as to their power, or made mistakes in the instrument itself, the appropriate remedy is by proceedings by the United States against the patentee."

It will be noticed that the Court referred to not only fraud, mistake and accident, but also to error on the part of the patent officials. The third Telephone Company case, 167 U.S. 224, at page 269, 17 S.Ct. 809, at page 821, 42 L.Ed. 144, modified this ruling insofar as it included as a ground of relief error of judgment on the part of the patent officials. The case did not hold that relief could not be founded upon mistake of fact as previously ruled in the two preceding cases. It did question by way of dictum the right to relief upon proof of any kind of a mistake of fact, but at the same time impliedly admitted the correctness of the former rulings that relief might be obtained upon proof of certain kinds of mistake of fact. I do not think that the defendants' position is supported to any material extent by the decision in United States v. United States Gypsum Co., supra, as the decision in that case is centered upon the alleged error of the Commissioner in issuing the patents under consideration. It was not a case of either fraud or mistake. Nor do I think the plaintiff's position is

supported to any material extent by the decision in McCormick Harvesting Machine Co. v. Aultman, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875, standing alone. That case was not an action by the Government to cancel a patent, but was a suit between private individuals. It held that the Department which issued the patent had no power later to set it aside or to annul it, and that the only authority competent to do so was vested in the courts of the United States. It did not decide the question now before us. Dictum in the opinion furnishes some support of the plaintiff's position. However, the plaintiff's position is probably supported by the decision in United States v. Stone, 2 Wall. 525, 535, 17 L.Ed. 765, particularly when considered in connection with the dictum in McCormick Harvesting Machine Co. v. Aultman, supra, to the effect that a patent for an invention stands in the same position and is subject to the same limitations as a patent for a grant of lands. In United States v. Stone the Court held land patents void in an action in which no fraud on the part of the patentee was charged in the bill, stating in its opinion that fraud was not the only ground upon which such a bill would be sustained.

 Independently of the opinions above referred to, there is probably another reason why the plaintiff should be permitted to proceed in this action on the ground of mistake of fact. It is invoking the equitable jurisdiction of this Court. It is well established that the jurisdiction of equity has existed from an early period to relieve both against fraud and against the consequences of a mistake of fact. The two matters are closely related, even though not requiring exactly the same elements. Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 435, 12 S.Ct. 239, 35 L.Ed. 1063; Zartman, Trustee, v. First Nat. Bank, 216 U.S. 134, 138, 30 S.Ct. 368, 54 L. Ed. 418; Foote v. Kansas City Life Ins. Co., 5 Cir., 92 F.2d 744, 745; Albert v. Martin Custom Made Tires Corp., 2 Cir., 116 F.2d 962, 965; Hemphill v. New York Life Ins. Co., 195 Ky. 783, 243 S.W. 1040. In United States Fidelity & Guaranty Co. v. Heller, D.C., 259 F. 885, at page 889, the Court said:

"Sometimes the line of distinction is difficult to draw. Sometimes they blend into each other. Sometimes the case is one of a simple mistake, and sometimes it is complex and several of these elements are present. Sometimes the transaction may easily, and sometimes with difficulty, be analyzed. The broad doctrine is, however, essentially simple and may be simply stated. It is that mistake is a recognized ground for the exercise of the equitable jurisdiction of the courts, and is just as clearly recognized as is fraud. The correction of mistakes by doing away with their consequences is a recognized remedy to be applied."

See also Weise v. Grove, 123 Iowa 585, 99 N.W. 191; Brown v. Wesson, 114 Miss. 216, 74 So. 831; 30 C.J.S., Equity, § 47 page 374.

In any event, the scope of the evidence on the part of the Government in its effort to sustain its allegation of fraud will no doubt be wide and will necessarily include facts bearing on mistake as well as on fraud. As a practical matter it would appear to be inadvisable for the Court to rule, at least at the present time, that the issue of mistake of fact should be eliminated from the case. Accordingly, to that extent the defendants' motion for summary judgment is overruled.